Steven J. Katzman, State Bar No. 132755
John L. Littrell, State Bar No. 221601
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-370
Email: skatzman@bklwlaw.com
          jlittrell@bklwlaw.com

*Attorneys for Plaintiff*
*Kristoffer Winters*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTOFFER WINTERS, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>LUGANO DIAMONDS AND JEWELRY, INC., a California Corporation; MORDECHAI FERDER, a.k.a. MOTI FERDER, an individual; MORDECHAI FERDER as trustee of the HAIM FAMILY TRUST; and SIMBA IL HOLDINGS, LLC, a Delaware Corporation,<br><br>        Defendants. | Case No. 8:25-cv-1202-DOC-DFM<br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Kristoffer Winters complains and alleges against defendants Lugano Diamonds and Jewelry, Inc. ("Lugano Diamonds"), Mordechai Ferder, a.k.a. Moti Ferder ("Mr. Ferder"), Mr. Ferder as the trustee of the Haim Family Trust, and Simba IL Holdings, LLC ("Simba IL Holdings") (collectively, the "Defendants") as follows:

## INTRODUCTION

1.    Lugano Diamonds is a high-end diamond and jewelry broker with eight locations ("salons") in the United States and one salon in London. Until recently Mr. Ferder was the Chief Executive Officer of Lugano Diamonds and one of the world's most esteemed diamond brokers.

2.    On or about March 15, 2025, Mr. Winters and Lugano Diamonds entered into a written agreement regarding Mr. Winters's investment of $3,075,000 in certain diamonds to be held by Lugano Diamonds. Lugano Diamonds agreed to make custom jewelry from the diamonds and thereafter sell the custom jewelry for a profit, which was to be split equally between Lugano Diamonds and Winters. This agreement was guaranteed by Mr. Ferder individually, the Haim Family Trust, and Simba IL Holdings.[1]

3.    This agreement contained a "Put Right" clause that allowed Mr. Winters to request at any time that Lugano Diamonds purchase Mr. Winters's interest in the diamonds and pay Mr. Winters a minimum return described in the Agreement no later than 5 days from the request. On May 8, 2025, Mr. Winters exercised his "Put Right" through a letter sent to Lugano Diamonds's now-CEO Josh Gaynor.

4.    Lugano Diamonds failed to pay Mr. Winters any amount of money to date pursuant to this agreement. As a result of Defendants' breach of this agreement, Mr. Winters

---

[1] The entity named in this agreement as a guarantor was "Simba IC Holdings, LLC." However, on information and belief, Mr. Winters has reason to believe that the inclusion of "Simba IC Holdings, LLC" on the agreement was a scrivener's error, and that the real entity that executed the agreement was "Simba IL Holdings, LLC." On information and belief, Simba IL Holdings, LLC is a Delaware limited liability company with connections to Mr. Ferder. Specifically, Mr. Ferder executed a stock purchase agreement in September 2021 on behalf of Simba IL Holdings, LLC, which involved the purchase of shares of Lugano Diamonds. https://www.sec.gov/Archives/edgar/data/1345126/000134512621000039/ex992luganostockpurchaseag.htm.

suffered damages in amount of at least $8,835,000, which is the balance owed to Mr. Winters as of June 15, 2025.

## THE PARTIES

5.    Plaintiff Kristoffer Winters is an individual residing in Nashville, Tennessee.

6.    Defendant Lugano Diamonds, Inc. is a corporation incorporated under the laws of California with its principal place of business in Newport Beach, California.

7.    Defendant Mordechai Ferder is an individual residing in Orange County, California.

8.    On information and belief, Mr. Ferder is the trustee of defendant the Haim Family Trust.

9.    On information and belief, defendant Simba IL Holdings, LLC is a limited liability company with a principal place of business in Delaware.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Mr. Winters is a citizen of Tennessee, Lugano Diamonds is a citizen of California, Mr. Ferder is a citizen of California, Simba IL Holdings is a citizen of Delaware, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11.    This Court has personal jurisdiction over Defendants because Lugano Diamonds's principal place of business is in California, Mr. Ferder resides in and does business in California, and the conduct giving rise to the allegations in this Complaint occurred, in substantial part, in California.

12.    Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in the Central District of California. Venue in the Central District of California is also proper because the agreement giving rise to the allegations in this Complaint requires any dispute to be submitted "to the state or federal courts located in the Central District of the State of California."

## GENERAL ALLEGATIONS

13.    On or about March 15, 2025, Lugano Diamonds, through Mr. Ferder, entered into an agreement with Mr. Winters (the "Agreement").

14.    The Agreement superseded certain prior agreements Mr. Winters had entered into with Mr. Ferder, in his individual capacity and on behalf of Lugano Diamonds, in September 2023, November 2023, and May 2024 (the "Prior Agreements").

15.    In the Prior Agreements, Lugano Diamonds and Mr. Ferder solicited Mr. Winters to purchase an ownership interest in certain diamonds that Lugano Diamonds was acquiring to be made into custom jewelry and thereafter sold for a profit.

16.    The Prior Agreements provided that (i) the diamonds would be purchased on behalf of Mr. Winters and Mr. Ferder through initial contributions by each partner; (ii) that Mr. Ferder would take possession of the diamonds and  safeguard them with other precious stones in the Lugano Diamonds inventory; (iii) that Mr. Ferder would update the records of Lugano Diamonds to reflect Mr. Winters's ownership interests of the diamonds; and (iv) that Mr. Ferder would purchase an insurance policy on the diamonds sufficient to cover each partner's ownership interest in them.

17.    The Prior Agreements also provided that any profits in connection with the purchase of the diamonds and subsequent sale of the custom jewelry would be allocated among Mr. Winters and Mr. Ferder in proportion to their initial capital contributions within designated timeframes.

18.    Mr. Winters paid Lugano Diamonds and Mr. Ferder $3,075,000 pursuant to the terms of the Prior Agreements with the expectation that his contributions would be used to purchase the diamonds.  These payments were made through multiple wire transfers from Mr. Winters to Lugano Diamonds in September 2023, November 2023, and May 2024.

19.    In October 2023, Mr. Winters was paid $90,000 in connection with the Prior Agreements. Mr. Winters never received any additional payments pursuant to the Prior Agreements.

20.     On or around March 15, 2025, Mr. Winters and Lugano Diamonds entered into the Agreement. A true and correct copy of the Agreement is attached to this Complaint as **Exhibit A**.

21.     Recital B of the Agreement provides that Mr. Ferder "recommended to [Mr. Winters] to invest in certain diamonds" and that Mr. Winters "made such investments as reflected" in a spreadsheet attached to the Agreement as an exhibit (the "Spreadsheet"). The Spreadsheet contains a "MINIMUM RETURN SCHEDULE" that describes a schedule of minimum returns due from Lugano Diamonds to Mr. Winters monthly through August 15, 2025 in connection with the Prior Agreements.

22.     Recital C of the Agreement provides that "Lugano consummated the purchase of the Diamonds on behalf of [Mr. Winters] in connection with the Prior Agreements, with the intent of making rings from the diamonds and thereafter selling the diamonds to third parties."

23.     Paragraph Two of the Agreement provides that:

> Lugano and [Mr. Ferder] acknowledge and agree (a) the Diamonds have been purchased for the original investment amounts set forth in the Recitals on behalf of the Investor and are accounted for accurately and in conformity with this Agreement on the books and records of Lugano, (b) the Diamonds are in the possession of Lugano on behalf of Investor and are stored in safekeeping with other precious stones in Lugano's inventory, (c) the Diamonds are fully insured to cover the minimum returns set forth in the Prior Agreements, (d) Lugano is fully responsible for any damage and risk of loss of the Diamonds for any reason prior to the sale of the Diamonds to the Buyers, (e) there is no more than $30M of similar inventory financing arrangements outstanding with Lugano as of the date of this Agreement, and (f) the Spreadsheet is true and correct in all respects.

24.     Paragraph Four of the Agreement provides that "[w]ithin 3 business days following the sale of the Diamonds . . . , Lugano and [Mr. Ferder] will provide a complete accounting to [Mr. Winters] along with reasonable back-up as may be requested and wire the necessary funds to [Mr. Winters]."

25.     Paragraph Four of the Agreement provides that, in connection with the sale of the diamonds, the sale price will be allocated to Mr. Winters and Lugano Diamonds as follows:

> (a) first, the original investment amount will be returned to [Mr. Winters]; (b) second, Lugano will be reimbursed for the expenses incurred in connection with the production of the rings . . .; (c) third, any remaining profit will be split between [Mr. Winters] and Lugano 50% to [Mr. Winters] and 50% to Lugano."

26.     Paragraph Five of the Agreement grants Mr. Winters a "Put Right," which enables Mr. Winters to:

> request at any time . . . with 5 days prior notice, for Lugano to purchase the Diamonds from [Mr. Winters] for the Minimum Return set forth on the Spreadsheet and Lugano shall wire such amount to [Mr. Winters] . . . no later than 5 days from the date notice was provided by [Mr. Winters].

27.     Paragraph Six of the Agreement is a "Guaranty" clause, which states that Mr. Ferder, the Haim Family Trust, and Simba IL Holdings "hereby irrevocably and unconditionally guarantees, on a joint and several basis, Lugano's complete and timely compliance with and performance of all representations, agreements, covenants and obligations of Lugano under this Agreement."

28.     Paragraph Seven, subsection b, provides that the Agreement "contains the complete agreement by, between and among the parties and supersedes any prior understandings, agreements or representations by, between or among the parties, written or oral, which may have related to the subject matter hereof in any way."

29.     The Agreement was signed by (i) Mr. Winters as Investor; (ii) Mr. Ferder on behalf of Lugano Diamonds; (iii) Mr. Ferder individually as a Guarantor; (iv) Mr. Ferder as trustee on behalf of the Haim Family Trust as a Guarantor; and (v) Mr. Ferder on behalf of Simba IL Holdings as a Guarantor.

30.     On May 8, 2025, Mr. Winters sent a letter to Lugano Diamonds and its now-CEO Josh Gaynor, in which he exercised his "Put Right" as permitted by Paragraph Five of the Agreement.

31.    The balance owed to Mr. Winters as of June 15, 2025, pursuant to the Agreement was $8,835,000.

32.    Defendants have not paid any money to Mr. Winters pursuant to the Agreement.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Defendant Lugano Diamonds)

33.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 32 above as though fully set forth here.

34.    At all relevant times, Mr. Winters fulfilled or performed all obligations required of him under the Agreement.

35.    Lugano Diamonds materially breached the Agreement, including without limitation, by failing to timely pay Mr. Winters all money he is due and owed under the Agreement within five days of the date on which Mr. Winters exercised his "Put Right."

36.    As a direct and proximate result of Lugano Diamond's material breach of the Agreement, Mr. Winters has suffered damages in an amount equal to the amount due and owing to him under the Agreement, which sums are readily ascertainable, and otherwise to be proven at trial of at least $8,835,000.

## SECOND CAUSE OF ACTION

### (Breach of Guaranty Against Defendants Mr. Ferder, the Haim Family Trust, and Simba IL Holdings)

37.    Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 36 above as though fully set forth here.

38.    On or about March 15, 2025, Mr. Ferder, the Haim Family Trust, and Simba IL Holdings (the "Guarantors") executed a valid guaranty, in writing, wherein the Guarantors "irrevocably and unconditionally guarantee[d], on a joint and several basis, Lugano's complete and timely compliance with and performance of all representations, agreements, covenants and obligations of Lugano under this Agreement."

39.     Lugano Diamonds defaulted on its obligations by failing to pay Winters the money he is due and owed under the Agreement within five days of the date on which Winters exercised his "Put Right."

40.     The Guarantors breached their guaranty to Mr. Winters by failing to ensure Lugano Diamonds's complete and timely payment to Mr. Winters all money he is due and owed under the Agreement within five days of the date on which Mr. Winters exercised his "Put Right."

41.     As a direct and proximate result of this breach of guaranty, Mr. Winters suffered damages in an amount equal to the amount due and owing to him under the Agreement, which sums are readily ascertainable, and otherwise to be proven at trial of at least $8,835,000.

## THIRD CAUSE OF ACTION

### (Fraud Against Defendant Mr. Ferder)

42.     Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 41 above as though fully set forth here.

43.     Mr. Ferder intended to and conspired to induce Mr. Winters to give Mr. Ferder money based on the false representations that (i) the diamonds would be purchased on behalf of Mr. Winters and accounted for accurately in the books and records of Lugano Diamonds; (ii) the diamonds would be kept in the possession of Lugano Diamonds on behalf of Mr. Winters and stored in safekeeping with other precious stones in Lugano Diamonds's inventory; (iii) the diamonds would be fully insured; (iv) Lugano Diamonds would be fully responsible for any damage and risk of loss of the diamonds for any reason prior to the sale of the diamonds; and (v) there was no more than $30,000,000 of similar inventory financing arrangements outstanding with Lugano Diamonds at the time the Agreement was executed.

44.     Mr. Ferder knew that these representations were false and were made with the intention of inducing Mr. Winters to invest with Lugano Diamonds and Mr. Ferder.

45.     Mr. Winters reasonably relied on the misrepresentations of Mr. Ferder and invested a total principal amount of $3,075,000 with Lugano Diamonds and Mr. Ferder.

46.     As a direct and proximate result of fraud by Mr. Ferder, Plaintiff has suffered damages in an amount to be proven at trial.

47.     The actions of Mr. Ferder were malicious, oppressive, and taken in reckless disregard of Mr. Winters's rights, so as to justify an award of punitive damages sufficient to punish and deter Mr. Ferder from engaging in such conduct in the future.

## FOURTH CAUSE OF ACTION

**(Breach of Fiduciary Duty Against Defendants Lugano Diamonds and Mr. Ferder)**

48.     Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 47 above as though fully set forth here.

49.     Lugano Diamonds and Mr. Ferder are experts in the field of sourcing, evaluating, appraising, purchasing, pricing, and selling diamonds, while Mr. Winters is not an expert in this field.

50.     Lugano Diamonds and Mr. Ferder enticed and solicited Mr. Winters to place his confidence and trust in Lugano Diamonds and Mr. Ferder's ability to source, evaluate, appraise, purchase, price, and sell diamonds.

51.     Mr. Winters agreed to partner with Mr. Ferder in his individual capacity and on behalf of Lugano Diamonds to purchase the diamonds with the intent for the diamonds to be made into custom jewelry and thereafter sold for a profit.

52.     At all relevant times, Lugano Diamonds and Mr. Ferder had a fiduciary relationship with Mr. Winters pursuant to this partnership.

53.     Lugano Diamonds and Mr. Ferder owed Mr. Winters fiduciary duties pursuant to the partnership established to purchase the diamonds with the intent for the diamonds to be made into custom jewelry and thereafter sold for a profit.

54.     Lugano Diamonds and Mr. Ferder breached these duties to Mr. Ferder.

55.     As a direct and proximate result of this breach of fiduciary duty, Mr. Winters has suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Money Had and Received Against Defendants Lugano Diamonds and Mr. Ferder)

56.    Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 55 above as though fully set forth here.

57.    Mr. Winters invested $3,075,000 with Lugano Diamonds and Mr. Ferder that was intended to be used to purchase the diamonds.

58.    The money invested by Mr. Winters was not used by Lugano Diamonds and Mr. Ferder to purchase the diamonds.

59.    Lugano Diamonds and Mr. Ferder have not returned to Mr. Winters $2,985,000 in principal invested by Mr. Winters with Lugano Diamonds and Mr. Ferder.

## SIXTH CAUSE OF ACTION

### (Promissory Estoppel Against all Defendants)

60.    Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 59 above as though fully set forth here.

61.    Plaintiff alleges, in the alternative to his breach of contract claim, that Plaintiff is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff and Defendants, or the existing contract is void, invalid, or unenforceable.

62.    Lugano Diamonds and Mr. Ferder made clear and unambiguous representations that Mr. Winters's investment would be used to purchase the diamonds, which were to be made into custom jewelry and sold to third parties for profit.

63.    Lugano Diamonds and Mr. Ferder made further clear and unambiguous representations that Lugano Diamonds would return Mr. Winters's original investment amount to him and pay Mr. Winters a split of any remaining profit generated from the sale of the diamonds.

FIRST AMENDED COMPLAINT

64.     Mr. Ferder, for himself individually and on behalf of the Haim Family Trust and Simba IL Holdings, made clear and unambiguous representations that he would personally guarantee Lugano Diamond's performance of these representations.

65.     Mr. Winters relied on these representations and assurances to his detriment by investing $3,075,000 with Lugano Diamonds and Mr. Ferder rather than investing this money elsewhere.

66.     As a direct and proximate result of the ats alleged herein, Mr. Winters suffered substantial detriment caused by reliance on said representations, assurances, and guarantees.

67.     Mr. Winters has suffered actual, significant, and unconscionable injury in an amount equal to the amount due and owing to him pursuant to the representations and assurances made by Lugano Diamonds and Mr. Ferder, which sums are readily ascertainable, and otherwise to be proven at trial of at least $8,835,000.

<u>SEVENTH CAUSE OF ACTION</u>

**(Unjust Enrichment Against Defendants Lugano Diamonds and Mr. Ferder)**

68.     Plaintiff realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 67 above as though fully set forth here.

69.     Plaintiff alleges in the alternative to his breach of contract claim that Plaintiff is entitled to recover under the unjust enrichment doctrine if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff and Defendants, or the existing contract is void, invalid, or unenforceable.

70.     Mr. Winters conferred a benefit upon Lugano Diamonds and Mr. Ferder when he invested $3,075,000 with Lugano Diamonds and Mr. Ferder for the purpose of purchasing the diamonds, which were to be made into custom jewelry and sold to third parties for profit.

71.     Lugano Diamonds and Mr. Ferder have retained $2,985,000 in principal that Mr. Winters provided and well as any profits generated from the sale of the diamonds.

72. As between Mr. Winters and Lugano Diamonds and Mr. Ferder, it would be unjust for Lugano Diamonds and Mr. Ferder to retain the benefit.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment as follows:

1. For both compensatory damages and non-compensatory damages in an amount to be proven at trial, but that exceed the jurisdictional minimum of this Court;

2. For punitive damages;

3. For attorneys' fees and costs of suit;

4. For restitution;

5. For an order enforcing the guaranty made by the Guarantors;

6. For any and all available statutory civil penalties;

7. For pre- and post-judgment interest at the maximum legal rate;

8. For a temporary restraining order, preliminary injunction, a permanent injunction, order of attachment, and other relief, against defendants, and each of them;

9. For such other and further relief as the Court deems just and proper.


Dated:  June 23, 2025

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: */s/ Steven J. Katzman*
Steven J. Katzman
John L. Littrell


*Attorneys for Kristoffer Winters*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

Dated:  June 23, 2025

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: */s/ Steven J. Katzman*
Steven J. Katzman
John L. Littrell

*Attorneys for Kristoffer Winters*

\#        \#            \#

FIRST AMENDED COMPLAINT

# EXHIBIT A

## AGREEMENT

This agreement (this "Agreement") is entered into effective as of March 15, 2025 (the "Effective Date"), by and among each of Kristoffer Winters, in his individual capacity ("Investor"), Lugano Diamonds & Jewelry, Inc. ("Lugano"), and solely with respect to Sections 6 and 7, Mordechai Ferder, in his individual capacity ("Moti"), the Haim Family Trust and Simba IC Holdings, LLC (collectively, the "Trusts").

## RECITALS

A.    Moti is the founder and Chief Executive Officer of Lugano.

B.    Moti recommended to Investor to invest in certain diamonds (collectively, the "Diamonds") and Investor made such investments as reflected on Exhibit A attached hereto (the "Spreadsheet").

C.    Lugano consummated the purchase of the Diamonds on behalf of the Investor in connection with the Prior Agreements, with the intent of making rings from the diamonds and thereafter selling the Diamonds to third parties (each, a "Buyer" and collectively, the "Buyers").

## AGREEMENT

1.    **Incorporation of Recitals**.  The foregoing recitals are incorporated herein and made a part of this Agreement.

2.    **Purchase, Possession, Record Keeping, Insurance and Outstanding Arrangements**.  Lugano and Moti acknowledge and agree (a) the Diamonds have been purchased for the original investment amounts set forth in the Recitals on behalf of the Investor and are accounted for accurately and in conformity with this Agreement on the books and records of Lugano, (b) the Diamonds are in the possession of Lugano on behalf of Investor and are stored in safekeeping with other precious stones in Lugano's inventory, (c) the Diamonds are fully insured to cover the minimum returns set forth in the Prior Agreements, (d) Lugano is fully responsible for any damage and risk of loss of the Diamonds for any reason prior to the sale of the Diamonds to the Buyers, (e) there is no more than $30M of similar inventory financing arrangements outstanding with Lugano as of the date of this Agreement, and (f) the Spreadsheet is true and correct in all respects.

3.    **Design and Manufacture of Ring; Intent to Sell**.  The parties agree that Lugano will be responsible for designing and manufacturing one or more rings for the Diamonds and Lugano will thereafter be responsible for delivering them for sale to the Buyers.

4.    **Profits and Losses; Distributions; Dissolution**. Within 3 business days following the sale of the Diamonds to the buyers, Lugano and Moti will provide a complete accounting to the Investor along with reasonable back-up as may be requested and wire the necessary funds to the Investor in accordance with Investor's wiring instructions.  The parties agree that in connection the sale of the Diamonds, the purchase

1

price paid by the Buyers will be allocated as follows:

        (a) first, the original investment amount will be returned to the Investor;

        (b) second, Lugano will be reimbursed for the expenses incurred in connection with the production of the rings purchased by the Buyers;

        (c) third, any remaining profit will be split between the Investor and Lugano 50% to the Investor, and 50% to Lugano.

Notwithstanding anything contained herein to the contrary, in no event will the Investor receive less than the minimum returns set forth in the Spreadsheet regardless of the actual purchase price paid by the Buyers for the diamonds and the parties acknowledge and agree that the Spreadsheet is the true and correct schedule of the minimum returns for the investments (the "Minimum Return") and the applicable Minimum Return will be based upon the dates Investor receives payments from Lugano for the Diamonds.

5.    **Put Right.** The parties agree that the Investor may request at any time following the Effective Date, with 5 days prior notice, for Lugano to purchase the Diamonds from the Investor for the Minimum Return set forth on the Spreadsheet and Lugano shall wire such amount to the Investor at an account designated by Investor no later than 5 days from the date notice was provided by the Investor. In the event of a sale of substantially all of the assets or equity of Lugano or any transfer of equity in Lugano by Moti or the Trusts (each, a "Triggering Event"), Lugano shall wire the required amounts pursuant to this Agreement (in no event less than the Minimum Return) to the Investor within 3 business days prior to the closing date of any Triggering Event.

6.    **Guaranty.** Each of Moti and the Trusts hereby irrevocably and unconditionally guarantees, on a joint and several basis, Lugano's complete and timely compliance with and performance of all representations, agreements, covenants and obligations of Lugano under this Agreement.

7.    **Miscellaneous**

(a) Amendment and Waiver. Any provision of this Agreement may be amended or waived only in a writing signed by the parties. No waiver of any provision hereunder or any breach or default thereof will extend to or affect in any way any other provision or prior or subsequent breach or default. No single or partial exercise of any right or power, or any abandonment or discontinuance of steps to enforce any right or power, shall preclude any other or further exercise thereof or the exercise of any other right or power. Failure on the part of a party to complain of any act of any party or to declare any party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder until the applicable statute of limitation period has run.

(b) Complete Agreement. This Agreement contains the complete agreement by, between and among the parties and supersedes any prior understandings, agreements or representations by, between or among the parties, written or oral, which may have related to the subject matter hereof in any way.

(c) Counterparts.   This Agreement may be executed in multiple counterparts
(including by means of electronic transmission in portable document format (pdf)),
any one of which need not contain the signatures of more than one party, but all such
counterparts taken together will constitute one and the same instrument.

(d) Governing law; Venue.  This Agreement, and all claims or causes of action
(whether in contract,  tort, statute or otherwise) that may be based upon, arise out of or
relate to this Agreement or the negotiation, execution or performance of this
Agreement will be governed by and construed in accordance with the internal laws of
the State of California applicable to agreements executed and performed entirely
within such State. In the event of any dispute related to this Agreement the parties
hereby irrevocably agree to submit such matter to the state or federal courts located in
the Central District of the State of California.

(e) No Strict Construction.  The language used in this Agreement will be
deemed to be the language chosen by the parties hereto to express their mutual intent,
and no rule of strict construction will be applied against any party.             -

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the
Effective Date.

**Investor:**

Kristoffer Winters                              March 13, 2025

**Lugano:**

Lugano Diamonds and Jewelry, Inc.

By: Mordechai Ferder, CEO

**Guarantors:**

Mordechai Ferder, and individual

Hami Family Trust                               Simba IC Holdings, LLC

By: Mordechai Ferder, Trustee                   By: Mordechai Ferder, Trustee

3

4

## EXHIBIT A

## MINIMUM RETURN SCHEDULE

### Diamond Partnership #1
*16 Carat Round Shaped Diamond*
*deal is 50/50, $875k KW & $875k with David Emmes*

### Diamond Partnership #2 *1*
*6 Carat Emerald Cut Shaped Diamond*

### Extension on the above Partnership of 1&2 Diamonds

| | | |
|---|---|---|
| Invested Amount | | $3,500,000. |
| Start Date | April 15, 2024 | |
| 1st Interest Payment due May 15 | $350,000. | |
| 2nd Interest Payment due June 15 | $350,000. | |
| 3rd Interest Payment due July 15 | $350,000. | |
| 4th Interest Payment due August 15 | $350,000. | |
| 350k per month / 4 months | | $1,400,000. |
| Total Due *Aug 15, 2024* | | $4,900,000. |

### Diamond Partnership #3

| | | |
|---|---|---|
| Invested Amount | | $650,000 |
| Start Date | May 21, 2024 | |
| 1st Interest payment due June 5th | $50,000. | |
| 2nd Interest Payment due July 5 | $50,000. | |
| 3rd Interest Payment due August 5 | $50,000. | |
| 50k per month / 3 months | | $150,000. |
| Total Due *August 5, 2024* | | $800,000. |

### Partnership of 1, 2 & 3 Combined into one

| | |
|---|---|
| Partnership of 1&2 Diamonds | $4,900,000 |
| Diamond Partnership #3 | $800,000. |
| Principal Total | $5,700,000. |
| | |
| Monthly Interest at 5% starting August 15, 2024 | $285,000 |
| Balance Due | $5,985,000. |

## Partnership of 1, 2 & 3 Combined into one cont.

**September 15, 2024**

| | |
|---|---|
| Principal | $5,985,000. |
| Interest | S.  285,000. |
| Balance Due | $6,270,000. |

**October 15, 2024**

| | |
|---|---|
| Principal | $6,270,000. |
| Interest | S.  285,000. |
| Balance Due | $6,555,000. |

**November 15, 2024**

| | |
|---|---|
| Principal | $6,555,000. |
| Interest | S.  285,000. |
| Balance Due | $6,840,000. |

**December 15, 2024**

| | |
|---|---|
| Principal | $6,840,000. |
| Interest | S.  285,000. |
| Balance Due | $7,125,000. |

**January 15, 2025**

| | |
|---|---|
| Principal | $7,125,000. |
| Interest | S.  285,000. |
| Balance Due | $7,410,000. |

**February 15, 2025**

| | |
|---|---|
| Principal | $7,410,000. |
| Interest | S.  285,000. |
| Balance Due | $7,695,000. |

**March 15, 2025**

| | |
|---|---|
| Principal | $7,695,000. |
| Interest | S.  285,000. |
| Balance Due | $7,980,000. |

### Partnership of 1, 2 & 3 Combined into one cont.

**April 15, 2025**

| | |
|---|---|
| Principal | $7,980,000.. |
| Interest | S.  285,000. |
| Balance Due | $8,265,000. |

**May 15, 2025**

| | |
|---|---|
| Principal | $8,265,000. |
| Interest | S.  285,000. |
| Balance Due | $8,550,000. |

**June 15, 2025**

| | |
|---|---|
| Principal | $8,550,000. |
| Interest | S.  285,000. |
| Balance Due | $8,835,000. |

**July 15, 2025**

| | |
|---|---|
| Principal | $8,835,000. |
| Interest | S.  285,000. |
| Balance Due | $9,120,000 |

**August 15, 2025**

| | |
|---|---|
| Principal | $9,120,000 |
| Interest | S.  285,000. |
| Balance Due | $9,405,000. |

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **FIRST AMENDED COMPLAINT** on all interested parties as follows:

Tobias S Keller
tkeller@kbkllp.com
Traci L Shafroth
tshafroth@kbkllp.com
Keller Benvenutti Kim LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
*Attorneys for Lugano Diamonds & Jewelry Inc.*

**[X] BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

**Mordechai Ferder**
1501 Serenade Terrace
Corona Del Mar, CA 92625

**Simba IL Holdings LLC**
c/o Telos Legal Corp.
13 West Main Street
P.O. Box 953
Felton, Delaware 19943
*Agent of Service of Process*

[X]    **BY UNITED STATES MAIL** – I enclosed the document(s) in a sealed envelope addressed to the person(s) at the address(es) listed in the attached service list and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed envelope with postage fully paid. I am employed in the county where the mailing occurred. The envelope was placed in the mail at San Clemente, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

1

CERTIFICATE OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 23, 2025 at Los Angeles, California.

/s/ Elizabeth Garcia
Elizabeth Garcia

CERTIFICATE OF SERVICE